**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

JOSEPH SHELTON                                          PLAINTIFF

VERSUS                          CIVIL ACTION NO. 2:06cv111-DCB-MTP

CITY OF LAUREL, CODY WOODRICK,
AND STEPHANIE GOODMAN                                  DEFENDANTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter comes before the Court on the defendants' Motion for Summary Judgment [**docket entry no. 26**]. Having reviewed the Motion, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds and orders as follows:

**FACTS**[1]

On March 16, 2005, Laurel police officers Cody Woodrick and Stephanie Goodman, along with several other officers, were summoned to a busy highway in Laurel because a Ford Expedition was parked in the street and blocking traffic. Upon arriving at the scene, the officers arrested the vehicle's owner, Lindsey Bryant. The plaintiff, Joseph Shelton, claims that he was attempting to assist the police officers when the officers attacked him, sprayed him with mace, dislocated his shoulder, and then arrested him for disorderly conduct, resisting arrest, and public drunkenness.

---

[1]As this action is before the Court on the defendants' Motion for Summary Judgment, all disputed facts must be construed in the plaintiff's favor.

The defendants claim, however, that Joseph Shelton interfered with the arrest of Bryant. The defendants further allege that when the officers attempted to "minimally restrain" Shelton, he became violent, and the officers were forced to spray him with mace to gain compliance.

On March 29, 2006, Joseph Shelton filed suit in the Circuit Court of Jones County, Mississippi. In his complaint, Shelton brings a 28 U.S.C. § 1983 claim wherein he alleges that Officers Woodrick and Goodman violated his Fourth Amendment right to be free from Excessive Force. Shelton also alleges that the individual defendants committed the state law torts of assault, false arrest, malicious prosecution, and abuse of process. The plaintiff's complaint also contains the allegation that the City of Laurel "had a policy, either express or implied, whereby it approved of unlawful and excessive uses of force by its officers." (Compl., 3.) Shelton further claims that the City of Laurel was negligent in hiring, training, and retaining Officers Woodrick and Goodman.

## DISCUSSION

### I. Standard for Summary Judgment

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record,

including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).[2]

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists. Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994). To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation." Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-movant must "designate specific facts showing the existence of a genuine issue for trial." Anderson, 477 U.S. at 250. "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Id. at 252. Moreover, the nonmoving party must make a showing sufficient to

---

[2]A contested fact is "material" when it has the potential to change the outcome of the case. Ginsburg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Id.

establish the existence of an essential element of its case, an element on which it will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law. When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the nonmovant will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962). By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party. Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II.  Shelton's § 1983 Claims under Monell v. City of New York Dep't of Social Servs., 436 U.S. 658 (1978)

Shelton contends that the City of Laurel has a policy of

-4-

approving police officers' use of excessive force.  To support this argument, Shelton points to the affidavit of Laurel Police Chief Walter Martin, wherein Chief Martin stated that he believed Officers Woodrick and Goodman acted consistently with the policies and procedures of the Laurel Police Department.  Shelton asserts that Chief Martin's statement proves that the City of Laurel has a policy of approving of its officers' use of excessive force. Shelton has provided no other argument or evidence to support his § 1983 claim against the City of Laurel.

Under 28 U.S.C. § 1983, the United States Supreme Court has held that "[m]unicipal liability, based on the actions of city officials, exists only where it can be shown that the officials acted in accordance with an official government policy or firmly entrenched custom." Monell v. City of New York Dep't of Social Servs., 436 U.S. 658, 694 (1978).  A municipality cannot be liable under § 1983 pursuant to the theory of respondeat superior liability alone. City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988).  "[A] municipality cannot be held liable [pursuant to § 1983] solely because it employs a tortfeasor...." Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998)(quoting Monell, 436 U.S. at 691).  Thus, to hold a municipality liable under § 1983 for the actions of its employees, the plaintiff must prove his injury was proximately caused by either:  (1) the official policy of the municipality, (2) the edicts and acts of a

final policymaker, which can fairly be said to represent the official municipal policy, or (3) the widespread practice of the municipality that is so permanent and well settled as to constitute a "custom" or written law. Monell, 436 U.S. at 694; see also Praprotnik, 485 U.S. at 127.

In the Fifth Circuit, "Proof of municipal liability sufficient to satisfy Monell requires: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy (or custom)." Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002). "[A] plaintiff must . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bd. of County Comm'r v. Brown, 520 U.S. 397, 404 (1997). In Pineda, the Fifth Circuit stated that to prove "municipal liability in the absence of a 'smoking gun' [there are] two paths of proof:"

  1.  A policy statement, ordinance, regulation or
      decision that is officially adopted and promulgated
      by the municipality's lawmaking officers or by an
      official to whom the lawmakers have delegated
      policy-making authority; or

  2.  A persistent, widespread practice of city officials
      or employees which, although not authorized by
      officially adopted and promulgated policy, is so
      common and well settled as to constitute a custom
      that fairly represents municipal policy. Actual or
      constructive knowledge of such custom must be
      attributable to the governing body of the
      municipality or to an official to whom that body
      had delegated policy-making authority. Actions of
      officers or employees of a municipality do not

render the municipality liable under § 1983 unless they execute official policy as above defined.

Pineda, 291 F.3d at 328 (citing Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984)).

For Shelton to prevail, he must prove that Officers Goodman and Woodrick were following a city policy or custom when they allegedly used excessive force against him.  See Praprotnik, 485 U.S. at 122 ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").  Shelton has failed to offer any evidence of a city policy authorizing or approving of the use of excessive force when making an arrest.  The only evidence that Shelton offers on the issue is a portion of Chief Martin's affidavit.  In his affidavit Chief Martin stated, "Excessive use of force by a police officer is strictly prohibited by the City of Laurel Police Department and has been so long before the incident with Mr. Shelton . . . .  The force used by the officers in this case was reasonable and necessary under the circumstances and was compliant with Laurel police procedures."  (M. Summ. J., Ex. 3.) The plaintiff argues, "Police Chief Walter Martin . . . believes that the arrest was handled consistently with the policies and procedures of the Laurel Police Department.  Ipso facto, then, if the officers' actions were clearly unreasonable, then the City is liable."  (Resp. to Def. M. Summ. J., 2.)

Shelton's argument is misguided.  Chief Martin's statement

merely indicates that he believed, after the fact, that the officers' conduct was reasonable and necessary. Chief Martin's affidavit does not provide evidence of a pre-incident police policy or custom whereby the City of Laurel approved of its officers' use of excessive force when making arrests. Moreover, the plaintiff has failed to show how the alleged "policy of authorizing excessive force" was the "moving force" behind Officers Goodman and Woodrick's alleged use of excessive force. Accordingly, the City of Laurel is entitled to summary judgment on the plaintiff's <u>Monell</u> claim.

## III. Shelton's § 1983 Excessive Force Claim Against Officers Woodrick and Goodman

Shelton alleges that Officers Woodrick and Goodman violated his Fourth Amendment right to be free from the use of excessive force, as incorporated to the states through the Fourteenth Amendment. The officers maintain that (1) they are entitled to qualified immunity, and (2) the plaintiff has failed to provide proof of the necessary elements to establish an excessive force claim.

### A. <u>Qualified Immunity Standard</u>

"A Court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

right?" Siegert v. Gilley, 500 U.S. 226, 232 (1991), quoted in Saucier v. Katz, 533 U.S. 194, 201 (2001). If the plaintiff's allegations, taken as true, would violate a constitutional right, "the next, sequential step is to ask whether the right was clearly established" at the time the challenged conduct occurred. Saucier, 533 U.S. at 201. To determine if a right is clearly established, "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987), quoted in Saucier, 533 U.S. at 202. This inquiry must be evaluated in the specific factual context of each particular case. Brousseau v. Haugen, 543 U.S. 194, 199 (2004) (per curiam). If the particular right violated was clearly established, the next step is to determine "whether the conduct of the defendant was objectively unreasonable in light of that then clearly established law." Felton v. Polles, 315 F.3d 470, 477 (5th Cir. 2002), quoted in Tarvers v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005). A law enforcement officer who makes a mistake and uses more force to restrain a suspect than allowed under the Fourth Amendment may nevertheless be entitled to immunity if the mistake is reasonable. Saucier, 533 U.S. at 205.

    B.    In the Light Most Favorable to Shelton, Did the Officers'
          Conduct Violate Shelton's Fourth Amendment Right to be
          Free from the Use of Excessive Force?

    Claims of excessive force "should be analyzed under the Fourth

Amendment and its 'reasonableness' standard . . . ." <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989). In order to state a claim for excessive force under the Fourth Amendment in this circuit, the plaintiff must show "(1) an injury which (2) resulted directly and only from the use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable." <u>Ikerd v. Blair</u>, 101 F.3d 430, 433-34 (5th Cir. 1996) (citing <u>Spann v. Rainey</u>, 987 F.2d 1110, 1115 (5th Cir. 1993)). Three factors are of particular importance in determining "objective reasonableness": (1) the severity of the crime, (2) whether the plaintiff posed an immediate threat to the safety of the officer or others, and (3) whether the plaintiff was actively resisting arrest or was attempting to evade arrest. <u>Gutierrez v. City of San Antonio</u>, 139 F.3d 441, 447 (5th Cir. 1998).

The defendants have offered five items of demonstrative evidence to support their argument that the officers' actions were reasonable and not excessive, they are: (1) the Laurel Police Department incident report, (2) the affidavit of Laurel Police Chief Walter Martin, (3) the deposition testimony of Joseph Shelton, (4) the expert report of Mark S. Dunston, and (5) a videotape of the incident taken from a patrol car. Shelton offers his deposition, which was taken at the defendants' instance, as proof that genuine issues of material fact preclude summary judgment.

The officers claim that Shelton became aggressive toward the officers when Lindsey Bryant was arrested. The defendants further assert that Shelton refused to comply with the officers' requests to step back, and when the officers attempted to place handcuffs on Shelton, he resisted. The defendants claim that Shelton was struggling so vigorously that it took two male officers to subdue him. It was only then that Officer Goodman sprayed Shelton with mace.

In Shelton's deposition, he testified to quite a different series of events. Shelton claims that he approached the officer arresting Bryant solely to explain that Bryant was having an asthma attack and needed her inhaler. (Shelton Dep., 8.) Shelton asserts that he next heard one of the officers say, "Let's get him, too," and in an effort to comply, Shelton began turning around so that the officers could handcuff him. (Shelton Dep., 11-12.) According to Shelton, he was then shoved against the Expedition without warning, and an officer struck him in the back which knocked the wind from his lungs. Shelton then claims to have said, "Hold on, man, no, no, no, I'm not trying to resist." (Shelton Dep., 14.) Shelton further alleges that while he was against the Expedition, Officer Woodrick dislocated his shoulder and Officer Goodman sprayed him with mace.[3]

---

[3]The defendants proffered a videotape recording of the incident as summary judgment evidence. This tape neither confirms nor eliminates either side's version of events. It is clear,

Without compelling evidence to the contrary, the Court must at this stage in the litigation assume that the plaintiff's version of the facts is true; thus, Shelton has suffered an injury which was directly caused by the defendants' objectively unreasonable use of excessive force.  In light of the three <u>Gutierrez</u>, *supra*, factors, the amount of force used by Officers Woodrick and Goodman was unreasonable.  No evidence has been shown to indicate that Shelton was an "immediate threat" to the safety of the officers or other bystanders.  Similarly, the crimes for which Shelton was arrested are not particularly heinous, i.e., public drunkenness, disorderly conduct, and resisting arrest.  Finally, because of the conflicting evidence, the Court is bound to conclude at this summary judgment juncture that the plaintiff was not resisting arrest.  Accordingly, when taken in the light most favorable to the plaintiff, the facts alleged show that the officers violated Shelton's Fourth Amendment right to be free the use of excessive force.

C.    <u>Were Officers Goodman and Woodrick's Actions Objectively Unreasonable in light of Clearly Established Law?</u>

Having found that the plaintiff has alleged the violation of a clearly established constitutional right, the Court must move to the second prong of the qualified immunity analysis:  "whether the

---

however, that Shelton did repeatedly say that he was not resisting. Obviously a person can say one thing and do another, but the ultimate decision concerning whether Shelton was resisting arrest is a question of fact which should be preserved for the trier of fact.

conduct of the defendant[s] was objectively unreasonable in light of that then clearly established law." Felton v. Polles, 315 F.3d 470, 477 (5th Cir. 2002), quoted in Tarvers v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005).  "To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." Freeman v. Gore, --- F.3d ---, 2007 WL 968131, at *3 (5th Cir. April 2, 2007).  In the context of this specific case, the Court must determine whether a reasonable officer in the position of Officer Goodman or Woodrick would have thought that the amount of force used to arrest Shelton was consistent with the Fourth Amendment.

The facts concerning Shelton's pre-arrest demeanor and behavior are disputed.  The defendants claim that Shelton was belligerent and violently resisted arrest.  Shelton asserts that he was respectful, helpful, and compliant.[4]  The reasonableness of the officers' actions hinges on these factual issues.  Disposition of

---

[4]Again, the videotape of the incident is less than illuminating on this issue.  At various times Shelton can be heard being polite and courteous to the officers, and at other times he cursed the officers.  The videotape does reveal that the plaintiff approached the officers with his hands raised; however, the videotape does not conclusively establish whether this conduct was threatening or benign.  The videotape further shows that Shelton was forcefully thrown against the Expedition by an officer.  Exactly what transpired after Shelton was placed against the vehicle, which is when Shelton allegedly resisted arrest, is unclear from the video.

such issues requires "factfinding and credibility assessments; dismissal is thus inappropriate at the summary judgment phase." Tarver, 410 F.3d at 754.

## IV. Shelton's State Law Claims Against the Officers and the City of Laurel

To the extent that Shelton alleges common law tort claims against the individual officers, such claims are deemed to have been made directly against the City under the MTCA. See Miss. Code Ann. § 11-46-5(1) ("[T]he immunity of the state and its political subdivisions from claims for money damages arising out of . . . the torts of their employees while acting within the course and scope of their employment is hereby waived . . . ."); Miss. Code Ann. § 11-46-7(2) ("[N]o employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."). See Compl., 2 ("[A]t all times relevant to this Complaint, Defendants Cody Woodrick and Stephanie Goodman were on duty and acting in their capacity as duly appointed and serving police officers of the Police Department of the City of Laurel, Mississippi."). The MTCA is the exclusive remedy available to plaintiffs seeking money damages from the state or its political subdivisions. Miss. Code Ann. § 11-46-7.

The defendants assert that the plaintiff's claims against the individual officers should be dismissed pursuant to Mississippi Code Section 11-46-9, which states that a government entity shall

not be liable for any claim,

> [A]rising out of any act or omission of an employee . . . engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in disregard of the safety and well-being of any person **not** *engaged in criminal activity at the same time of the injury.*

Miss. Code Ann. § 11-46-9(1)(c) (emphasis added).

The defendants claims that (1) "the evidence shows the absence of any reckless disregard," and (2) the plaintiff was engaged in criminal activity, i.e., resisting arrest, public drunkenness, and disorderly conduct, when he was injured.  For the officers, and ultimately the city, to receive this immunity, there must be a causal nexus between the plaintiff's criminal activity and the tortfeasor's wrongdoing.  <u>Estate of Williams v. City of Jackson</u>, 844 So. 2d 1161, 1165 (Miss. 2003).  Section 11-46-9 does not protect a municipality where "the fact that the [plaintiff] is engaged in a criminal activity is merely fortuitous and has no relation to the transaction out of which liability would otherwise arise." <u>City of Jackson v. Perry</u>, 764 So. 2d 373, 379 (Miss. 2000) (refusing to extend Section 11-46-9 immunity to city where officer had car accident with unlicensed driver; the plaintiff's "criminal activity" did not cause officer's conduct).  Accordingly, the applicability of Section 11-46-9(1)(c) must be considered in light of the plaintiff's individual claims.

    A.    <u>Assault</u>

-15-

To establish a prima facie case of assault, the plaintiff must prove that (1) the defendant intended to cause a harmful or offensive contact with the plaintiff, or an imminent apprehension of such a contact, and (2) the plaintiff was put in such an imminent apprehension. <u>Whitten v. Cox</u>, 799 So. 2d 1, ¶ 7 (Miss. 2000). "A battery goes one step beyond an assault in that a harmful contact actually occurs." <u>Id.</u> Inasmuch as the plaintiff claims that the officers' conduct went beyond merely placing the plaintiff in an "imminent apprehension" of contact, Shelton's claim is truly one for battery.[5]

With regard to Shelton's assault claim, the defendants state *in toto*, "The conduct of the officers was in the course of their police duties without any specific intent to cause harm." (Mem. of Auth. M. Summ. J., 5.) This one sentence is the only assault-specific argument for summary judgment made by the defendants. As such, the defendants apparently rely on the immunity provided by Section 11-46-9-(1)(c).

Thus, the following two issues arise: (1) whether the plaintiff was engaged in unlawful conduct when he was allegedly assaulted, and (2) whether the plaintiff's unlawful conduct caused the officers to assault him. Moreover, Shelton must show that the

---

[5]The plaintiff failed to specify exactly what conduct rose to the level of assault and battery. Presumably, the plaintiff's assault claim arises from Officer Goodman's use of mace against him and Officer Woodrick's dislocation of Shelton's shoulder.

officers acted with reckless disregard for his safety and well-being. <u>Foster v. Noel</u>, 715 So. 2d 174, 178-79 (Miss. 1998). Reckless disregard is "a higher standard than gross negligence and 'embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.'" <u>City of Jackson v. Powell</u>, 917 So. 2d 59, 71 (Miss. 2005) (quoting <u>Collins v. Tallahatchie County</u>, 876 So. 2d 284, 287 (Miss. 2004)).

Whether the plaintiff was engaged in criminal activity at the time of his injury is a question of fact. Oftentimes, it is undisputed that the plaintiff was injured during the commission of a crime. <u>See</u> <u>Stone v. Damon</u>, 2006 WL 3147728, at *6 (N.D. Miss. Nov. 2, 2006); <u>Moore v. Carroll County</u>, 960 F. Supp. 1064, 1092 (N.D. Miss. 1997); <u>Titus v. Williams</u>, 844 So. 2d 459 (Miss. 2003); <u>Smith v. Brookhaven Police Dep't</u>, 914 So. 2d 180 (Miss. Ct. App. 2005). As previously mentioned, however, the underlying facts upon which Shelton's criminal charges hinge are disputed. Inasmuch as there are a genuine issues of material fact concerning whether the plaintiff was engaged in criminal activity which caused the officers to allegedly assault him, the defendant's motion for summary judgment regarding Shelton's assault claim must be denied.[6]

B.   <u>False Arrest</u>

To establish a claim of false arrest or false imprisonment, a

---

[6]Similarly, the plaintiff has alleged and testified to facts sufficient to warrant a jury determination as to the reckless disregard issue.

plaintiff must prove that the defendant caused him "to be arrested falsely, unlawfully, maliciously, and without probable cause." Croft v. Grand Casino Tunica, Inc., 910 So. 2d 66, 75 (Miss. Ct. App. 2005) (citing City of Mound Bayou v. Johnson, 562 So. 2d 1212 (Miss. 1990)).  See also Parker v. Miss. Game & Fish Comm'n, 555 So. 2d 725, 728-79 (Miss. 1989).  Where probable cause exists for an arrest, there can be no false arrest claim.  Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001).

Along with disorderly conduct and resisting arrest, the plaintiff was arrested for public drunkenness.  At the time of the arrest, Shelton admitted to stopping the Expedition in the middle of the right lane of a busy bridge, admitted to having consumed alcohol earlier in the day, smelled of alcohol, admitted to throwing trash from the vehicle into the street, admitted to physically abusing his female passenger (the owner of the vehicle), and was wearing no shirt in spite of 40-degree weather. (Testimony of Officer Cody Woodrick before Laurel City Court, 8.)  Certainly these facts evince probable cause to support an arrest for either public drunkenness or disorderly conduct.  Accordingly, the defendants are entitled to summary judgment on the plaintiff's false arrest claim.

C.  Abuse of Process

To survive summary judgment on his abuse of process claim, the plaintiff must show evidence of record which creates a genuine

issue of material fact regarding these three elements: "(1) the [opposing] party made an illegal use of a legal process, (2) the party had an ulterior motive, and (3) damage resulted from the perverted use of process." Ayles ex rel. Allen v. Allen, 907 So. 2d 300, ¶10 (Miss. 2005). "[T]he crucial element of this tort is the intent to abuse the privileges of the legal system." Id. The cause of action of abuse of process applies to both criminal and civil process. Id. An abuse of process claim is separate and distinct from a malicious prosecution action. Malicious prosecution concerns the malicious issuance of criminal process; in contrast, abuse of process concerns the improper use of process after it has been lawfully issued. Moon v. Condere Corp., 690 So. 2d 1191, § II.b. (Miss. 1997).

The plaintiff has failed to allege that the officers acted with an ulterior motive of carrying out some improper purpose.[7] Moreover, Shelton has not shown exactly how the officers used the process of a court to accomplish a result "not commanded by [the process] or not lawfully obtainable under [the process]." Edmonds v. Delta Democrat Publishing Co., 93 So. 2d 171 (Miss. 1957). Thus, the defendants are entitled to summary judgment on the

---

[7]"The usual case of abuse of process is one of some form extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it." Campbell v. City of San Antonio, 43 F.3d 973, 980 n.11 (5th Cir. 1995), quoting RESTATEMENT OF TORTS 2D § 682, cmt. b.

plaintiff's abuse of process claim.

D.   Malicious Prosecution

A claim of malicious prosecution accrues on the day the criminal prosecution is terminated in the plaintiff's favor. City of Mound Bayou, 562 So. 2d at 1217. Consequently, where the criminal prosecution has yet to be terminated in the plaintiff's favor, malicious prosecution is not a viable claim. See Heck v. Humphrey, 512 U.S. 477, 489 (1994); Joiner Ins. Ag., Inc. v. Principal Cas. Ins. Co., 684 So. 2d 1242, 1245 (Miss. 1996). It is undisputed that the criminal charges against Shelton have not terminated in his favor. (See Abstract of Court Record, Laurel Municipal Court, Ex. 5, M. Summ. J.) As such, the defendants are entitled to summary judgment on Shelton's malicious prosecution claim.

E.   Negligent Hiring, Training, Retaining[8]

The plaintiff alleges that "Defendant City of Laurel is liable for the actions of the officers under state law for negligent

_____

[8]Although not argued by the defendants, the processes of hiring, supervising, and retaining police officers are discretionary functions which ordinarily insulate municipalities from suit. City of Jackson v. Powell, 917 So. 2d 59, ¶ 52 (Miss. 2005) ("[T]he choice to employ and the manner of supervision of police officers does affects [sic] public police . . . The manner in which a police department supervises, disciplines, and regulates its police officers is a discretionary function of the government and thus the city is immune to suit under § 11-46-9(1)(d).").  The immunity provisions of the MTCA, however, are affirmative defenses; therefore, the Court cannot render a decision on the basis of an MTCA immunity defense that the defendants failed to raise.

hiring, training, and retention of the officers which led to the actions of these officers." (Compl., 2.) The defendants' motion for summary judgment states, "There has been no showing by Shelton that the officers should not have been hired or retained in the department or that they were not properly supervised." (Mem. Auth. M. Summ. J., 5.) The plaintiff failed to respond in any way to the defendants' argument. Where the nonmoving party fails to make a showing sufficient to establish the existence of an essential element of its claim, the movant is entitled to summary judgment. <u>Celotex</u>, 477 U.S. at 322. Such is the case here.

**CONCLUSION**

The City of Laurel is entitled to summary judgment on the plaintiff's <u>Monell</u> claim because the plaintiff failed to provide sufficient evidence of a policy or custom whereby the City of Laurel authorized or approved of officers' use of excessive force. With regard to the plaintiff's § 1983 claim against the individual defendants, summary judgment is inappropriate. Similarly, genuine issues of material fact preclude summary judgment on the plaintiff's state law assault claim. The defendants are entitled to summary judgment, however, on the plaintiff's state law claims of false arrest; abuse of process; malicious prosecution; and negligent hiring, training and retaining. Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [**docket entry no. 26**] is **GRANTED in-part** and **DENIED in-**

**part.**

SO ORDERED, this the ___16^th___ day of April, 2007.


_____s/ David Bramlette_____
UNITED STATES DISTRICT JUDGE